IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  4:24CR00350 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| DERRICK EGGLESTON, | ) | AMANDA M. KNAPP |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | **ORDER** |


On December 3, 2024, the Court conducted a hearing on Defendant Derrick Eggleston's ("Defendant" or "Mr. Eggleston") Motion to Modify Conditions of Release and Request for Hearing (ECF Doc. 30 ("Motion to Modify")) under 18 U.S.C. § 3145(a)(2).  The Motion to Modify was referred to the undersigned for resolution.  (*See* Non-document Order dated November 18, 2024.)  Yasmine Makridis of the U.S. Attorney's Office appeared on behalf of the Government.  Edward Bryan appeared on behalf of the Defendant.  Alex Torres was present on behalf of the United States Pretrial and Probation Office.

After considering the evidence presented and the arguments of counsel, and for the reasons set forth below, the Court denies the Motion to Modify.

## I.    Procedural History

Defendant was charged with one count of Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8) on September 19, 2024.  He appeared before the undersigned for arraignment on September 25, 2024.  Subject to agreed bond

1

terms and conditions of release, the Government did not seek pretrial detention.  Mr. Eggleston was released on a $20,000 unsecured bond with conditions of release that included a restriction to travel within the Northern District of Ohio and participation in the home detention component of the Office of Probation and Pretrial Services's ("Pretrial Services") location monitoring program.  (ECF Docs. 7, 8.)

On October 10, 2024, Defendant moved to modify the conditions of his pretrial release, asking that his conditions be modified to allow travel outside the state of Ohio for employment purposes, as he was employed as a driver for a trucking company.  (ECF Doc. 13.)  The Government did not oppose this modification.  (ECF Doc. 16.)  On October 15, 2024, Defendant amended his motion to also seek removal of his ankle monitor, asserting that there would be no way to keep his ankle monitor charged when he was working over the road.  (ECF Doc. 15.)  The Government opposed this modification, stating that Pretrial Services was able to provide extra batteries and a portable charger that would allow Defendant to keep his ankle monitor charged while he was traveling for work.  (ECF Doc. 17.)

On October 18, 2024, Pretrial Services requested that Defendant's conditions of release be modified to include: "Travel restricted to the Northern District of Ohio, and the continental United States, for employment purposes only."  (ECF Doc. 18.)  Pretrial Services objected to the request to terminate location monitoring, noting that charging equipment and a portable charging station would mitigate any potential risk that the GPS monitoring tracker would incur a complete battery shutdown.  (*Id.*)  The Court ordered the modification of Mr. Eggleston's terms of release as recommended by Pretrial Services on October 22, 2024.  (ECF Doc. 19.)

Defendant filed the present Motion to Modify on November 15, 2024, asking that a hearing be scheduled before the undersigned to address the motion.  (ECF Doc. 30.)  The Government filed a response to the Motion to Modify on November 21, 2024, recommending that Mr. Eggleston be continued on location monitoring and home detention but permitted to travel for limited purposes after notifying his pretrial services officer in advance of the needed travel.  (ECF Doc. 31.)  Pretrial Services filed a modification request on November 22, 2024, recommending that Mr. Eggleston remain under the home detention component of the location monitoring program, but indicating that he may be approved for discretionary time, with verification provided to his supervising officer.  (ECF Doc. 32.)

## II.      Evidence Considered

The indictment alleges that Mr. Eggleston, knowing he had previously been convicted of crimes punishable by imprisonment for terms exceeding one year, knowingly possessed a Ruger 28mm pistol and ammunition on April 30, 2024.  (ECF Doc. 1.)  The Pretrial Services Report dated September 25, 2024, outlines information provided by Mr. Eggleston and information regarding his criminal history.  Based on that information, Pretrial Services recommended a finding that no condition or combination of conditions could reasonably assure the safety of the community, and further recommended that Mr. Eggleston be detained.  Nevertheless, on the date of Mr. Eggleston's arraignment, the Government reached agreement with defense counsel on terms of release that included location monitoring; the government did not seek detention.

At the hearing on the Motion to Modify, defense counsel proffered that Mr. Eggleston only agreed to location monitoring as a condition of release at his arraignment because his brother had recently passed away and he needed to attend his brother's funeral.  Defense counsel

3

also proffered that Mr. Eggleston's employer, a trucking company, is unwilling to continue his employment while he is on location monitoring because of issues that might arise with clients or law enforcement if the company's driver is seen to be wearing an ankle monitor.  Thus, the defense proffers that Mr. Eggleston is unable to work while on location monitoring.

Defense counsel further proffered that location monitoring with home detention interferes with Mr. Eggleston's ability to assist with his children's school transportation and school events, and interferes with his ability to care for his sister and elderly grandmother, who have health issues and need his assistance; his sister reportedly had multiple recent hospitalizations.  Counsel acknowledged that Mr. Eggleston's supervising pretrial services officer has permitted him to attend to his sister in the past, but noted Mr. Eggleston's concern that he might need to give assistance on an emergency basis and be unable to reach his supervising officer.

The Government proffered the Pretrial Services Report, which contains information about Mr. Eggleston's family situation and criminal history.  Mr. Eggleston reportedly has two four-year-old children who split time between Mr. Eggleston's residence and their mother's residence.  He is also the father of a teenager who reportedly lives in Texas.

Per the Pretrial Services Report and the Government's proffer, Mr. Eggleston's criminal history includes: (1) two 2007 convictions for carrying a concealed weapon (F4), both cases involving Defendant possessing a firearm in his motor vehicle; (2) a 2010 conviction for falsification (M1), when Defendant gave a false identification card to law enforcement; (3) a 2014 state conviction for possession of heroin (F3) and trafficking in heroin (F3); (4) a 2015 conviction for assault (M1), where Defendant reportedly hit a woman with a closed fist, retrieved a firearm, then hit the woman again, causing raised bruises with cuts; (5) a 2017 federal

4

conviction for distribution of heroin; and (6) a 2022 federal conviction for felon in possession of a firearm, where Defendant possessed a firearm in a motor vehicle while on supervised release for his prior federal conviction. The Government thus notes that Mr. Eggleston has three prior firearm convictions that all involved possession of a firearm in his motor vehicle.

In the present case, the Government proffers that Mr. Eggleston was pulled over for a window tint violation, that officers smelled and saw burnt marijuana in his vehicle, and that they saw Mr. Eggleston present an identification card that had marijuana "shake" on it. Officers also discovered a firearm in the vehicle, leading to the present charge. Notably, the new charge arose less than two months after Mr. Eggleston was granted early termination of his supervised release for the 2022 federal firearm conviction.

With the agreement of both counsel, Mr. Eggleston offered direct statements to the Court in rebuttal to the Government's proffers. He argued that he did not have a violent criminal record, asserting that the alleged victim in his assault conviction was in fact the aggressor. He noted that his convictions for possession of firearms are not violent offenses and expressed concern regarding his Second Amendment rights. He noted that he had a consistent history of appearing for court proceedings. He asserted that his sister's multiple health conditions had worsened since his brother's death, making her short of breath all the time and unable to work, and that his grandmother also had serious health conditions. He noted that his teenaged daughter usually told him about school events at the last minute. He reported that his household was suffering due to the limitations imposed by his ankle monitor, and that he did not want to impose on his supervising officer by constantly contacting him for permission to do things. He noted that he was being diligent and patient and had not sabotaged his ankle monitor.

5

In rebuttal, the Government proffered that all of Defendant's reported convictions had been verified, including his misdemeanor conviction for assault. The government also proffered that Mr. Eggleston was involved in a violent altercation while in custody in February 2022 and noted that he was detained pending trial on his 2022 firearm conviction because he was on federal supervised release at the time of his arrest.

### III.    Applicable Law

Under the Bail Reform Act, if pretrial release on personal recognizance or an unsecured appearance bond will not reasonably assure the appearance of the defendant or will endanger the safety of any other person or the community, a judicial officer must order the pretrial release of the defendant "subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]"  18 U.S.C. § 3142(b), (c)(1)(B); *see United States v. Semenchuk,* No. 24-1405, 2024 WL 4751486, at *1 (6th Cir. Oct. 18, 2024).

In determining the least restrictive condition or combination of conditions to ensure a person's appearance as required and the safety of others and the community, a judicial officer must take into account the available information regarding the following: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  18 U.S.C. § 3142(g); *see Semenchuk,* 2024 WL 4751486, at *1; *United States v. Bartlett*, No. 1:23-CR-20676, --- F. Supp. 3d ---, 2024 WL 1715397, at *11 (E.D. Mich. Apr. 22, 2024*), aff'd sub nom. United States v. Semenchuk*, No. 24-1405, 2024 WL 4751486 (6th Cir. Oct. 18, 2024).

6

When a person has been ordered released under section 3142, that person is entitled to "file, with the court having original jurisdiction over the offense, a motion for amendment of the conditions of release."  18 U.S.C. § 3145(a)(2).  The motion must be determined promptly.  *Id.*

"The government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or the community by clear and convincing evidence."  *Bartlett*, --- F. Supp. 3d ---, 2024 WL 1715397, at *11 (quoting *United States v. Shuklin*, No. 19-4171, 2020 WL 2992522, at *2 (6th Cir. Mar. 18, 2020) and *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004)).

## IV.    Analysis

Mr. Eggleston argues that the terms of his release should be modified to remove the home detention and location monitoring conditions, asserting that these conditions are more restrictive than the "least restrictive" conditions necessary to reasonably assure his appearance and the safety of others.  The Government argues that the conditions are necessary to reasonably assure both Mr. Eggleston's appearance and the safety of others and the community.

## 1.    Nature and Circumstances of the Offense Charged (§ 3142(g)(1))

The first § 3142(g) factor—the nature and circumstances of the offense charged— suggests that significant oversight remains necessary to reasonably assure the safety of others and the community while Mr. Eggleston is on pretrial release.  This factor considers "the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a [sex trafficking offense], a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1).

Here, Mr. Eggleston is charged as a felon in possession of a firearm and ammunition, an offense that creates a danger to others and the community.  The specific circumstances increase that concern.  The relevant traffic stop took place on April 30, 2024, less than two months after Mr. Eggleston was granted early termination of supervised release for a 2022 federal conviction for the same crime.  Further, at the time of the stop, Mr. Eggleston was apparently using marijuana while driving a motor vehicle, had marijuana "shake" on his identification card, and had a firearm and ammunition in the car.  The 2022 federal conviction for which he had just completed supervised release also involved possession of a firearm in a motor vehicle.  This factor suggests both dangerousness and a repeated disregard for legal requirements that suggests significant oversight by Pretrial Services is needed to ensure that Mr. Eggleston's activities on pretrial release do not endanger others.

## 2.    Weight of the Evidence (§ 3142(g)(2))

The second § 3142(g) factor—the weight of the evidence against the defendant with regard to the underlying offense—also supports the continued need for oversight of Mr. Eggleston's activities on pretrial release through location monitoring.  The Sixth Circuit has made clear that "[t]his factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010) (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)).

Mr. Eggleston's apparent decision to engage in the same dangerous and illegal activities for which he was previously convicted, less than two months after he was released from federal supervision in connection with that prior conviction, creates a clear and significant concern that Mr. Eggleston will return to the same or similar dangerous and illegal activities unless he is

8

subject to significant continued oversight by Pretrial Services.  Indeed, it was Pretrial Services' initial recommendation that Mr. Eggleston remain in federal custody pending his trial in this case.  This factor supports continued location monitoring as a condition of release.

### 3.      History and Characteristics of the Person (§ 3142(g)(3))

The third § 3142(g) factor—the history and characteristics of the person—also supports continued location monitoring as a condition of release.  This factor requires a two-part inquiry. First, the Court must consider characteristics like Defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, ... drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A).  Second, the Court must consider whether Defendant was on probation, parole, or supervised release for any federal, state, or local offense at the time of the offense. *Id.* at § 3142(g)(3)(B).

Mr. Eggleston's criminal record includes a number of serious offenses involving firearms and controlled substances.  Defense counsel notes that some of his convictions date back almost twenty years.  But his most distant felony convictions (in 2007) involved illegal possession of a firearm in a motor vehicle, mirroring both his 2022 conviction and the present charge.  The older convictions therefore suggest a continuing pattern of dangerous and illegal behavior relating to firearms over an extended period.  Mr. Eggleston's state and federal drug trafficking and distribution convictions, in between his firearm convictions (in 2013 and 2017), further suggest an ongoing pattern of dangerous and illegal activities.  Finally, Mr. Eggleston's misdemeanor assault conviction heightens concerns regarding his potential for future violence in the context of what appears to be a continued practice of keeping illegal firearms close at hand.

Mr. Eggleston is correct that his criminal record does not indicate that he has failed to appear for prior court proceedings. But the record does suggest continued disregard for the law and legal authority, including his 2010 falsification conviction, his 2022 violation of supervised release (for illegal possession of a firearm while on release), his repeated engagement in illegal activities for which he has previously been convicted, and the near proximity between the successful termination of his supervised release for the 2022 firearm conviction and the present offense, where he appeared to be actively using marijuana while driving and in possession of a firearm and ammunition. This evidence raises reasonable concerns that Mr. Eggleston may involve himself in further dangerous and illegal activities if he is not carefully supervised through the location monitoring program.

Mr. Eggleston argues that his ability to support his family, both financially and through his availability to assist with school and health issues, is burdened by the limitations of location monitoring. He asserts that he may not always have sufficient advance notice of the needs of his children and family to enable him to officially request permission to participate. But he also informed the Court that he had, in some instances, chosen not to reach out to his supervising officer regarding activities he wished to participate in because he did not want to inconvenience the officer. The Government emphasized that Mr. Eggleston need only notify his supervising officer regarding any issues he needs to address for school or his family.

Mr. Eggleston also notes that his prior employer, a trucking company, is not willing to continue his employment if he wears an ankle monitor. The Government voiced some concern regarding Mr. Eggleston's participation in commercial driving given evidence of his recent use of marijuana while driving, and noted that Mr. Eggleston is not constrained from seeking other

10

types of employment.  The Government also expressed a willingness to agree to further modifications of the conditions of release as necessary to accommodate any future jobs.

Overall, this factor supports a finding that home detention and location monitoring are necessary conditions of Mr. Eggleston's pretrial release to ensure the safety of others.

**4.      Nature and Seriousness of the Danger Posed by Release (§ 3142(g)(4))**

The fourth factor—the nature and seriousness of the danger to any person or the community that would be posed by the person's release—also weighs in favor of the maintenance of home detention and location monitoring as conditions of release.

While Mr. Eggleston is correct that the possession of a firearm is not itself a violent crime, there is no question that ready access to firearms and ammunition multiply the potential for violence in any situation.  Given Mr. Eggleston's repeated and illegal possession of firearms over a period of years, including while on federal supervision and immediately after obtaining the early termination of supervision, in the context of the remainder of his criminal history, the record suggests a serious potential danger to others and the community if location monitoring is removed from Mr. Eggleston's conditions of release.

## V.      Conclusion

In imposing conditions of pretrial release, this Court must impose "the least restrictive further condition, or combination of conditions" necessary to "reasonably assure the appearance of the person as required and the safety of any other person and the community[.]"  18 U.S.C. § 3142(c)(1)(B).  Having considered the evidence and proffers presented by both parties, and for the reasons set forth above, the Court finds that the "least restrictive" conditions necessary to reasonably assure the safety of others and the community continues to include the home

11

detention component of the location monitoring program.  Nevertheless, Mr. Eggleston is welcome, and encouraged, to communicate with Pretrial Services and his supervising officer as often as necessary to facilitate his continued desire to support and provide for his family.

Mr. Eggleston's motion to modify the conditions of his release under 18 U.S.C. § 3145(a)(2) is denied.


IT IS SO ORDERED.

Dated:  December 13, 2024                              s/Amanda M. Knapp
                                                                       Amanda M. Knapp
                                                                       United States Magistrate Judge