IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 4:24CR00350 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| DERRICK EGGLESTON, | ) | AMANDA M. KNAPP |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | **ORDER** |

On April 9, 2025, Defendant Derrick Eggleston ("Defendant" or "Mr. Eggleston") filed a Motion to Modify Conditions of Release (ECF Doc. 43 ("Motion to Modify")) under 18 U.S.C. § 3145(a)(2). The Motion to Modify was referred to the undersigned for resolution. (*See* Non-document Order dated April 11, 2025.) The Government filed a Response in Opposition to the Motion to Modify (ECF Doc. 44) and the United States Pretrial and Probation Office ("Pretrial Services") provided a responsive Release Status Report (ECF Doc. 49).

For the reasons set forth below, the Court denies the Motion to Modify.

### I.     Procedural History

Defendant was charged with one count of Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8) on September 19, 2024. He appeared for arraignment on September 25, 2024. Subject to agreed bond terms and conditions of release, the Government did not seek pretrial detention. Mr. Eggleston was released on a

$20,000 unsecured bond with conditions of release that included participation in the home detention component of Pretrial Services's location monitoring program.  (ECF Docs. 7, 8.)

On October 10, 2024, Defendant moved to modify the conditions of his pretrial release, asking that his conditions be modified to allow travel outside the state of Ohio for employment purposes, as he was employed as a driver for a trucking company.  (ECF Doc. 13.)  The Government did not oppose this modification.  (ECF Doc. 16.)  On October 15, 2024, Defendant amended his motion to also seek removal of his ankle monitor, asserting that there would be no way to keep his ankle monitor charged when he was working over the road.  (ECF Doc. 15.)  The Government opposed this modification, stating that Pretrial Services was able to provide extra batteries and a portable charger that would allow Defendant to keep his ankle monitor charged while he was traveling for work.  (ECF Doc. 17.)

On October 18, 2024, Pretrial Services requested that Defendant's conditions of release be modified to include: "Travel restricted to the Northern District of Ohio, and the continental United States, for employment purposes only."  (ECF Doc. 18.)  Pretrial Services objected to the request to terminate location monitoring, noting that charging equipment and a portable charging station would mitigate any potential risk that the GPS monitoring tracker would incur a complete battery shutdown.  (*Id.*)  The Court ordered the modification of Mr. Eggleston's terms of release as recommended by Pretrial Services on October 22, 2024.  (ECF Doc. 19.)

Defendant moved again to modify the conditions of his release on November 15, 2024, asking that a hearing be scheduled before the undersigned to address the motion.  (ECF Doc. 30.)  Pretrial Services filed a modification request on November 22, 2024, recommending that Mr. Eggleston remain under the home detention component of the location monitoring program, but

2

indicating that he may be approved for discretionary time, with verification provided to his supervising officer.  (ECF Doc. 32.)  The undersigned held a hearing on December 3, 2024, and issued an order denying the motion on December 13, 2024.  (ECF Doc. 36.)

On March 11, 2025, Pretrial Services filed a Release Status Report – Information Only advising the Court that Mr. Eggleston had tested positive for fentanyl and norfentanyl on February 12, 2025.  (ECF Doc. 41.)  Mr. Eggleston denied illicit drug use and his next urinalysis screen was negative.  (*Id*.)  As a result of the positive tests, Mr. Eggleston's drug testing was increased to three times per month, and he was re-referred for a substance abuse treatment assessment.  (*Id.*)  Pretrial Services recommended that bond be continued as previously set.  (*Id.*)

Mr. Eggleston filed the present Motion to Modify on April 9, 2025, asking to remove the "home detention" requirement from his conditions of release, stating he would consent to a "curfew" requirement in its place.  (ECF Doc. 43.)  In support, he asserts that he wants to be available to assist with a variety of family activities, including academic and athletic events for his teenaged daughter, sports activities for his young son, and assisting with the health needs of his sister, grandmother, and girlfriend (who was anticipating the birth of a new child).  (*Id.*)

The Government objects to the requested modification, noting that a similar request was previously denied by the Court and asserting that bond should not be modified to allow for reduced supervision when Mr. Eggleston's positive drug test indicates that he has continued to violate the law.  (ECF Doc. 44.)  Pretrial Services recommends that Mr. Eggleston's bond be continued as previously set.  (ECF Doc. 49.)

3

## II. Evidence Considered

The indictment alleges that Mr. Eggleston, knowing he had previously been convicted of crimes punishable by imprisonment for terms exceeding one year, knowingly possessed a Ruger 28mm pistol and ammunition on April 30, 2024. (ECF Doc. 1.) The Pretrial Services Report dated September 25, 2024, outlines information provided by Mr. Eggleston and information regarding his criminal history. Based on that information, Pretrial Services recommended a finding that no condition or combination of conditions could reasonably assure the safety of the community, and further recommended that Mr. Eggleston be detained. Nevertheless, on the date of Mr. Eggleston's arraignment, the Government reached agreement with defense counsel on terms of release that included location monitoring; the government did not seek detention.

As outlined in this Court's December 2024 Order, Mr. Eggleston's criminal history includes: (1) two felony convictions for carrying a concealed weapon; (2) a misdemeanor conviction for falsification; (3) state felony convictions for possession and trafficking in heroin; (4) a misdemeanor conviction for assault; (5) a federal conviction for distribution of heroin; and (6) a federal conviction for felon in possession of a firearm in 2022, where Defendant possessed a firearm while on supervised release for his prior federal conviction. (ECF Doc. 36.) In the present case, Mr. Eggleston was reportedly pulled over for a window tint violation when officers smelled and saw burnt marijuana in the vehicle and saw Mr. Eggleston present an identification card with marijuana "shake" on it. (*Id.*) Officers also discovered a firearm in the vehicle, leading to the present charge, which arose less than two months after Mr. Eggleston was granted early termination of his supervised release for the 2022 federal firearm conviction. (*Id.*)

4

At the hearing on the prior motion, Mr. Eggleston offered direct statements to the Court. He noted that he had a consistent history of appearing for court proceedings, asserted that his sister and grandmother had serious health conditions, noted that his teenaged daughter usually told him about school events at the last minute, reported that his household was suffering due to the limitations imposed by his ankle monitor. He also said that he did not want to impose on his supervising officer by constantly contacting him for permission to do things.

Since the Court's decision on the prior motion, Pretrial Services has reported that Mr. Eggleston violated the terms of his supervised release by testing positive for fentanyl and norfentanyl in February 2025. (ECF Doc. 41.) Following an increase in drug testing, a re-referral for a substance abuse treatment assessment, and a clean urine screen, Pretrial Services nevertheless recommended that Mr. Eggleston's bond be continued. (*Id.*)

In the present motion, Mr. Eggleston asserts that his family responsibilities remain the reason for his requested modification. (ECF Doc. 43, p. 3.) He describes his children's school and athletic responsibilities, notes his support for his sister and grandmother, and asserts that his most pressing need is to be available for his girlfriend when their new child is born. (*Id.*) Pretrial Services recommends that Mr. Eggleston's bond be continued as previously set, noting his positive urinalysis in February, his continued unemployment, and his failure to provide regular location monitoring schedule requests. (ECF Doc. 49.) Mr. Eggleston has reportedly been advised throughout his supervision to provide schedule update requests to Pretrial Services on a weekly basis, but has routinely not requested those changes. (*Id.*) Pretrial Services believes Mr. Eggleston's reported family needs can be addressed under the home detention component of the location monitoring program so long as he provides his schedule updates in advance. (*Id.*)

5

### III. Applicable Law

Under the Bail Reform Act, if pretrial release on personal recognizance or an unsecured appearance bond will not reasonably assure the appearance of the defendant or will endanger the safety of any other person or the community, a judicial officer must order the pretrial release of the defendant "subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(b), (c)(1)(B); *see United States v. Semenchuk,* No. 24-1405, 2024 WL 4751486, at *1 (6th Cir. Oct. 18, 2024).

In determining the least restrictive condition or combination of conditions to ensure a person's appearance as required and the safety of others and the community, a judicial officer must take into account the available information regarding the following: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g); *see Semenchuk,* 2024 WL 4751486, at *1; *United States v. Bartlett*, 731 F. Supp. 3d 836, 851 (E.D. Mich. 2024), *aff'd sub nom. Semenchuk*, 2024 WL 4751486. "The government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or the community by clear and convincing evidence." *Bartlett*, 731 F. Supp. 3d at 851 (quoting *United States v. Shuklin*, No. 19-4171, 2020 WL 2992522, at *2 (6th Cir. Mar. 18, 2020) and *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004)).

When a person has been ordered released under section 3142, that person is entitled to "file, with the court having original jurisdiction over the offense, a motion for amendment of the conditions of release." 18 U.S.C. § 3145(a)(2). The motion must be determined promptly. *Id.*

### IV.     Analysis

Mr. Eggleston requests modification of the terms of his pretrial release to replace the home detention condition with a curfew condition. The Government argues that the existing conditions remain necessary and appropriate, consistent with this Court's December 2024 order.

**1.     Nature and Circumstances of the Offense Charged (§ 3142(g)(1))**

The first § 3142(g) factor considers "the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a [sex trafficking offense], a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1). For the reasons set forth in this Court's December 2024 Order (ECF Doc. 36, pp. 7-8), this factor suggests both dangerousness and a repeated disregard for legal requirements that suggest significant oversight by Pretrial Services is needed to ensure that Mr. Eggleston's activities on pretrial release do not endanger others.

**2.     Weight of the Evidence (§ 3142(g)(2))**

The second § 3142(g) factor, the weight of the evidence against the defendant as to the underlying offense, requires this Court to consider "the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010) (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)). For the reasons set forth in this Court's December 2024 Order (ECF Doc. 36, pp. 8-9), this factor supports continued location monitoring and home detention as conditions of release.

7

3. **History and Characteristics of the Person (§ 3142(g)(3))**

The third § 3142(g) factor, the history and characteristics of the person, requires a two-part inquiry.  First, the Court must consider characteristics like Defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, ... drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A).  Second, the Court must consider whether Defendant was on probation, parole, or supervised release for any federal, state, or local offense at the time of the offense. *Id.* at § 3142(g)(3)(B).

For the reasons set forth in this Court's December 2024 Order (ECF Doc. 36, pp. 9-11), the undersigned finds Mr. Eggleston's past convictions reflect a continuing pattern of dangerous and illegal activities, including: keeping illegal firearms close at hand; engaging in illegal activities for which he was previously convicted; and disregard for the law and legal authority. This Court previously held that the "evidence raises reasonable concerns that Mr. Eggleston may involve himself in further dangerous and illegal activities if he is not carefully supervised through the location monitoring program." (*Id.* at p. 10.)  That concern appears to be well founded, as Pretrial Services has since reported that he violated the terms of his supervised release by testing positive for fentanyl and norfentanyl.  (ECF Doc. 41.)

In support of his request for fewer pretrial restrictions, Mr. Eggleston describes family responsibilities that are largely the same as the responsibilities addressed in this Court's prior order, but with the added need to accommodate the arrival of a new child.  (ECF Doc. 43, p. 3.) But Pretrial Services reports that these needs can be addressed under the existing pretrial release conditions if Mr. Eggleston submits schedule update requests on a weekly basis, as he has been

8

routinely advised to do.  (ECF Doc. 49.)  Overall, the undersigned continues to find that this factor supports a conclusion that home detention and location monitoring are necessary conditions of Mr. Eggleston's pretrial release to ensure the safety of others.

**4.      Nature and Seriousness of the Danger Posed by Release (§ 3142(g)(4))**

The fourth § 3142(g) factor, the nature and seriousness of the danger to any person or the community that would be posed by the person's release, continues to weigh in favor of the maintenance of home detention and location monitoring as conditions of release for the reasons set forth in this Court's December 2024 Order.  (ECF Doc. 36, p. 11.)

### V.      Conclusion

In imposing conditions of pretrial release, this Court must impose "the least restrictive further condition, or combination of conditions" necessary to "reasonably assure the appearance of the person as required and the safety of any other person and the community[.]"  18 U.S.C. § 3142(c)(1)(B).  For the reasons set forth above, the Court finds that the "least restrictive" conditions necessary to reasonably assure the safety of others and the community continue to include the home detention component of the location monitoring program.

Mr. Eggleston's motion to modify the conditions of his release under 18 U.S.C. § 3145(a)(2) is denied.

IT IS SO ORDERED.

Dated:  May 9, 2025               *s/Amanda M. Knapp*
                                  Amanda M. Knapp
                                  United States Magistrate Judge